IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERMEC TECHNOLOGIES CORP., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>PALM, INC., a Delaware corporation,<br><br>Defendant.<br>_____/ | No. C 09-80098 MISC WHA<br><br>Related to:<br><br>No. C 09-80097 MISC WHA<br><br>**ORDER QUASHING SUBPOENA DUCES TECUM IN ITS ENTIRETY AND GRANTING PROTECTIVE ORDER** |

Respondent Google, Inc., has no stake in the patent litigation provoking this ancillary proceeding. That litigation is across the continent in Delaware. One of the litigants there has come here and served a subpoena duces tecum on Google to force it to search for and to produce documents revealing the detailed workings of various Google programs and to produce Rule 30(b)(6) witnesses to testify on the same topics.

The litigants back in Delaware are Intermec Technologies Corporation and Palm, Inc. They are suing each other for patent infringement. Intermec is the one who served the subpoena in question on Google. The subpoena in question comes at the end of the Delaware discovery period, having already been once extended. To assist, the undersigned general-duty judge advanced the hearing on this matter to May 15, 2009, less than a week after receiving the motions. After a full hearing, the essence of this order is that the subpoena is vastly overbroad

and Intermec has not come even close to justifying such an imposition on a non-party. The subpoena shall be **QUASHED IN ITS ENTIRETY**.

*          *          *

The subpoena is drawn in broad terms, as now explained. For example, Document Request No. 5 demands:

> 5. Documents created and maintained in the ordinary course of business sufficient to show the manner in which Google Applications, such as Google Maps, Google Calendar, Google Docs, Gmail, and Picasa, store and access data.

In turn, "documents" are defined as:

> 5. "Document(s)" is used in the same manner as that term is defined in Fed. R. Civ. P. 34(a) and shall include, without limitation, electronically stored information ("ESI"), things, project proposals, memos, notes, inventor notebooks, invention disclosures, source code (including comments if any), object code, communications regarding product development, revision histories, flowcharts, drawings, specifications, documents related to testing, status reports or summaries, computer simulations, logic diagrams, and preliminary technical documentation, along with every draft or non-identical copy of the foregoing.

Further in turn, an even longer and more bone-crushing definition of "Electronically Stored Information" is included but will be omitted here except to point out that the definition incorporates instructions to "Palm," not to Google, and is thus incomprehensible in literal context.

Further, the subpoena admonishes that "[t]he use of any tense of a verb shall be construed to include also within its meaning all of the tenses of that verb." Thus, Request No. 5 calls for past as well as present (even planned) incarnations of features that "store and access data."

"Google Applications" is said to mean "[a]ny and all software applications offered by Google," which must, in light of the prior paragraph above, be deemed to include every Google application ever, past or present. Just in case there could be any doubt as to what "any and all" means, the subpoena admonishes that it means "each and every."

"Google" itself expansively includes, says the subpoena, all predecessors, affiliates, officers, directors, agents, employees and representatives.

2

Altogether there are fourteen definitions calculated to enlarge the vastness of the universe of materials requested. After the definitions, the subpoena lists "INSTRUCTIONS." For example, Instruction No. 2 states:

> 2. These Requests extend to all documents in the possession, custody, and/or control of Google, as well as all documents in the possession, custody, or control of persons or entities under Google's control.

When combined with the definition of "Google" stated above and the definition of "documents" above, not to mention "person" (omitted here for brevity), the universe of places to look and materials to gather grows enormous.

To take another, for example, Instruction No. 3 states:

> 3. In the event that more than one copy of a document exists, Google should produce the original and each non-identical copy of each document or other tangible thing requested herein that is in Google's possession, custody or control, or the control of its agents, attorneys, accountants, or employees.

In demanding all non-identical copies, the subpoena seeks all versions of the same document, such as, for example, those with handwritten notes or e-mails with varying replies.

Instruction No. 5 states:

> 5. These Requests shall be deemed to be continuing in nature to the fullest extent permitted by law. If further responsive information comes into the possession or attention of Google or its attorneys at any time during the course of this proceeding, such information must be provided as required by Federal Rules of Civil Procedure.

The subpoena thus sets no cut-off time period but insists that Google update its search daily to satisfy the subpoena, just in case some new item of information is created.

After the "DEFINITIONS" and the "INSTRUCTIONS," the subpoena lists five document requests. All call for documents "created and maintained in the ordinary course of business sufficient to show" five broad categories. As stated, for example, Request No. 5 refers to "the manner in which Google Applications . . . store and access data."

Then there are five "Deposition Topics," with the same five categories to be addressed by Google engineers pursuant to Rule 30(b)(6).

In sum, the subpoena is drawn in massively overbroad and burdensome terms. It calls for more evidence than is often produced by litigants themselves in many federal actions in our district.

\*         \*         \*

What is the relevance and need for upending Google to search for and to produce so much material and testimony? Intermec states (Br. 5) that "these [Google] documents are plainly relevant to Intermec's claims as they are, at a minimum, reasonably calculated to lead to the discovery of admissible evidence." This *ipse dixit* is not explained. The Delaware judge has in no way blessed or vetted the requests for relevance. No expert has explained the need. Counsel was given an opportunity to explain at the hearing but it comes down to generalizations like "how Google works with Palm." This is like asking for all documents to explain how an F-16 operates. Truth be told, this exercise has all the hallmarks of a classic fishing expedition.

For the sake of argument, however, this order assumes that buried within the haystack of material sought, one could find a few needles of pertinence to the Delaware litigation. Nonetheless, the subpoena will be quashed in its entirety. The subpoena is so overbroad and burdensome that no uninvolved third party should be required to comply. The subpoena is so far beyond the pale of reasonableness that no attempt will be made to reform it. To do so would reward manifest overreaching and encourage litigants to ask for the moon without fear of penalty. The undersigned and other judges often cut back document requests to accommodate burden, among other reasons, but we should do so only when the request is in the ballpark of reasonableness to begin with. When the requests are well outside the ballpark of reasonableness, as here, judges have the discretion to simply deny all relief. This practice encourages reasonableness up-front.

All of this applies doubly when the respondent is a *non-party* like Google. Of course, non-parties may occasionally have to testify and give evidence for and against litigants but non-parties should not be burdened in discovery to the same extent as the litigants themselves. Requests to non-parties should be narrowly drawn to meet specific needs for information. *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993).

4

It is true that various partial compromises were discussed before these motions but the fact remains that the subpoena itself is the instrument that channels the power of the court. Counsel should not abuse that instrument by subpoenaing unreasonably huge amounts of material and then using their unreasonable demand as leverage in follow-on negotiations.

No showing has been made here that could possibly come close to justifying the massive burden Intermec has written into its subpoena.

\*          \*          \*

The burden here is greatly multiplied by the timing. The subpoena was issued near the end of the discovery period. Intermec expected Google to comply within a month. For a narrow subpoena, this would have been reasonable, even for a non-party. For a bone-crushing subpoena like the one in question, one month was too short and too unreasonable. This timing hardship is over and above the basic problem that Google should not have to bear the burden to comply with so onerous a demand in the first place.

\*          \*          \*

The foregoing is sufficient but one additional factor counsels against enforcement. The subpoena calls for confidential technology owned by Google. Releasing this information to strangers will compromise the privacy of that information. Yes, a protective order could and would (likely) restrict access, but it would still allow access by counsel, legal assistants, experts, their assistants, the jury, and court staff. Google should not have to suffer even this disclosure without a clear-cut need, narrowly drawn to meet that need, much less to suffer the risk of breach of the protective order. Again, Intermec has not even come close to making such a showing.

**CONCLUSION**

For the reasons stated above, the subpoena is **QUASHED IN ITS ENTIRETY** and Google's motion for protective order is **GRANTED**. Intermec's cross-motion for enforcement is **DENIED**.

Under Rule 37(a)(5), Intermec is **ORDERED TO SHOW CAUSE** why it should not pay Google's reasonable expenses in connection with the subpoena and the motion, including attorney's fees. Said submission is due by **NOON ON MAY 22, 2009**, and any response thereto is

5

due on by **NOON ON MAY 29, 2009**, both limited to fifteen pages, double-spaced and no footnotes, after which the matter shall be deemed submitted.

**IT IS SO ORDERED.**

Dated: May 15, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE